# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CHERYL FLORENCE,

    Plaintiff,

vs.                                                                           Civil No. 05-425 WJ/RHS

VALENCIA COUNTY DETENTION
CENTER, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S
MOTION TO STRIKE DEFENDANT'S MOTION TO STRIKE
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO STRIKE**

THIS MATTER comes before the Court pursuant to Defendant Correctional Medical Services, Inc.'s Motion to Strike Plaintiff's Expert Witness (Doc. 34) and Plaintiff's Motion to Strike Defendant Correctional Medical Services' Motion to Strike Plaintiff's Expert Witness (Doc. 35).

I.     PLAINTIFF'S MOTION TO STRIKE

Defendant Correctional Medical Services, Inc. (CMS) filed its motion on June 1, 2006. The deadline for pretrial motions was May 1, 2006. Plaintiff contends that CMS's motion to strike should be stricken as having been filed late. CMS responds that the motion is a motion in limine rather than a pretrial motion. CMS also contends that the basis for the motion did not exist until Plaintiff filed her response to CMS's motion for summary judgment which included an affidavit from Plaintiff's expert.

The pretrial order in this case does not differentiate between motions in limine and other pretrial motions and generally sets the deadline for all non-discovery related pretrial motions for May 1, 2006. The pretrial order also notes that any pretrial motions filed after the deadline may be considered untimely at the discretion of the Court. Notwithstanding the fact that the pretrial order makes no distinction between motions in limine and other pretrial motions, this Court generally treats motions in limine differently than other pretrial motions and actually sets a specific deadline for motions in limine as trial approaches. Additionally, this Court is not inclined to exercise its discretion to strike an evidentiary motion that could not have been raised earlier. Accordingly, Plaintiff's motion to strike CMS's motion will be denied.

II.     DEFENDANT CMS'S MOTION TO STRIKE

CMS's motion to strike Plaintiff's expert, Dr. Kerlinsky, is styled as a Daubert motion. When expert opinion testimony is offered under Fed. R. Evid. 702, the Court is required to perform a gatekeeping function to ensure that the opinion offered is both reliable and relevant. See Dodge v. Cotter Corp., 328 F.3d 1212, 1221-22 (10th Cir. 2003). In this instance, Plaintiff did not respond to the Daubert motion except to argue that it should be stricken as untimely. Thus, the record upon which the Court must decide the Daubert issue may be less than fully developed. However, I conclude that the record is sufficient to assess the reliability of Dr. Kerlinsky's expert opinions for purposes of the motion for summary judgment. The Court will, however, defer ruling on the issue of the admissibility at any trial of Dr. Kerlinsky's opinion testimony. Should this case proceed to trial, Defendant will need to renew its Daubert motion prior to commitment of the trial in order that the Court may develop a more complete record.

2

CMS contends that Dr. Kerlinsky's expert opinions are not reliable because they are not based on facts that enable him to express reasonably accurate conclusions but are, instead, based on conjecture. In other words, CMS calls into question the factual basis of Dr. Kerlinsky's expert opinion. CMS also argues that Dr. Kerlinsky should be disqualified as an expert based on a conflict of interest.

### A.     Factual Basis for Dr. Kerlinsky's Opinions

In order for an expert opinion to be reliable, it must be based on scientific knowledge which "implies grounding in the methods and procedures of science based on actual knowledge, not subjective belief or unsupported speculation." Dodge, 328 F.3d at 1222 (internal quotations and citations omitted). The facts on which an expert bases his or her opinion must enable the expert to express a reasonably accurate conclusion though it need not be absolutely certain. Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995). The Court must etermine whether an expert's opinions are sufficiently supported by the relied upon facts. General Elec. Co. v. Joiner, 522 U.S. 136 (1997). While a district court may not determine credibility and determine admissibility on whether the court agrees with the expert's conclusions, the Court need not admit an expert opinion if there is too great an analytical gap between the data and the proffered opinion. Id. at 146.

CMS's overarching assertion regarding the factual basis of Dr. Kerlinsky's opinions is that these opinions are based on conjecture rather than admissible evidence. The facts underlying an expert opinion need not themselves be admissible in evidence. See Fed. R. Evid. 703; SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1517 (10th Cir. 1990). Thus, to the extent CMS's argument is that the data relied on by Dr. Kerlinsky is not itself admissible, CMS's argument fails.

3

However, CMS also argues that there is an analytical gap between the data relied on by Dr. Kerlinsky and his opinions, rendering those opinions unreliable. CMS argues that three general areas of opinion are unreliable because Dr. Kerlinsky has reached these opinions based on an insufficient factual basis.

        1.    <u>Dr. Kerlinsky's Opinions Regarding the Underlying Medical Records in this Case</u>

CMS argues that Dr. Kerlinsky's opinion that the underlying medical records in this case are falsified or incomplete is unsubstantiated. Dr. Kerlinsky testified at his deposition that he had never seen several of the medical records he was shown at the deposition and that his opinion prior to his deposition that records were falsified or incomplete was based, in part, in the lack of records. However, even after reviewing the additional records, Dr. Kerlinsky opined that the CMS records are either incomplete or falsified.

As the basis for this assertion, Dr. Kerlinsky cites a lack of signatures on some of the signature lines in the records, uniformity of handwriting, and a lack of documentation regarding the care received by Plaintiff for her head injury. In reviewing the medical records, the Court notes that there are records without signatures, records without dates, and records without times indicated. While CMS's expert concluded that there is no evidence of falsification and any incomplete portions of the records are insignificant, the significance of any incomplete portions of the record is not for the Court to determine so long as there is a reasonable dispute. The Court concludes that there is a sufficient factual basis for Dr. Kerlinsky's opinion that the records are either incomplete or falsified.

CMS also contends that there is no underlying factual basis for Dr. Kerlinsky's testimony regarding the state of mind of persons making entries in the medical records.  In his initial expert report, Dr. Kerlinsky expressed the opinion that the various providers making entries were reluctant to fill in information in the record.  At his deposition, Dr. Kerlinsky admitted that this opinion was based on speculation.  This opinion, and any opinion regarding the mental state of the persons making entries in Plaintiff's medical records, is not admissible because it is without a sufficient factual basis.  Accordingly, it will not be considered by the Court for purposes of summary judgment.

> 2. <u>Dr. Kerlinsky's Opinions Regarding Plaintiff's Medical and Psychiatric Treatment</u>

CMS maintains that Dr. Kerlinsky stated an opinion that Plaintiff was treated only as a drug abuser and not seen by psychiatric services.  CMS then argues that this opinion was partially withdrawn by Dr. Kerlinsky following his review of additional records during and after his deposition, and that, to the extent the opinion was not withdrawn, it is unsupported.

CMS's rendition of Dr. Kerlinsky's opinion on this topic is not entirely accurate.  Dr. Kerlinsky's opinion as stated in his affidavit following his deposition was that CMS's misdiagnosis of Plaintiff as an intoxicated substance abuser rather than as a psychiatric patient was caused by incomplete or falsified records, and that the incorrect information overall led to mistreatment and inappropriate treatment causing Plaintiff's injuries.

The medical records indicate that Plaintiff had an intake at the Valencia County Detention Center (VCDC) at 7:30 a.m. on April 15, 2003.  At 10:25 a.m., VCDC noted that Plaintiff was being transferred to the Bernalillo County Detention Center (BCDC).  Notes at VCDC, however,

indicate that Plaintiff was still at VCDC until at least 11:45 a.m. on April 15, 2003. There is a record that Plaintiff was medically screened by CMS, intake staff for BCDC. While there is a space on the screening form for both a date and time of the screening, neither the date nor time are filled in. The screening is stamped indicating that a referral was made to the psychiatric services unit. A separate referral form referring Plaintiff to the psychiatric services unit was prepared. This separate referral form is dated April 15, 2003 and gives a time of approximately 2:30 p.m. for the referral. However, the referral form has a space for the name of the person submitting the referral, and this space is blank.

Based on the above documentation, the Court concludes that Dr. Kerlinsky's opinion that incomplete or falsified records led to inadequate treatment which in turn led to injury is not without factual support and is not mere conjecture. While CMS's expert has a differing interpretation of the records and reaches conclusions that contradict those of Dr. Kerlinsky, this does not render Dr. Kerlinsky's opinions unreliable.

CMS notes that the psychiatric services unit was run by the University of New Mexico and not by CMS. CMS then argues that it cannot be held liable for the psychiatric unit's failure to adequately diagnose or treat Plaintiff. While this argument is good fodder for a summary judgment motion, it does not bear on the reliability of Dr. Kerlinsky's opinions. The Court concludes that Dr. Kerlinsky's opinions regarding Plaintiff's medical and psychiatric treatment have sufficient support in the underlying data to be considered during summary judgment.

> 3.   <u>Dr. Kerlinsky's Opinions Regarding Plaintiff's Injuries</u>

CMS contends that Dr. Kerlinsky's opinion that Plaintiff was beaten by four guards is wholly unsubstantiated. CMS notes that Dr. Kerlinsky did not personally witness Plaintiff receiving her injuries and Plaintiff has no memory of how she sustained her injuries.

Dr. Kerlinsky's report and deposition testimony indicate that he assessed Plaintiff's injuries, allegedly sustained during her incarceration, after she was released. He notes that Plaintiff had a number of bruises located on her face, neck, head, both arms, groin, abdomen, both legs and pelvis. Dr. Kerlinsky noted that Plaintiff had two black eyes and there was evidence from her skull and neck that her head had been jammed. Dr. Kerlinsky stated that the nature and extent of the injuries indicate they were not self-inflicted, were likely delivered by more than one person and were likely inflicted deliberately. Dr. Kerlinsky also reached a conclusion that the assailants were probably male guards and that two, three or even four persons probably inflicted the injuries.

The Court concludes there is sufficient factual basis, specifically the nature of the injuries and the numerosity of the bruises, for Dr. Kerlinsky's opinion that Plaintiff's injuries were not self-inflicted. Additionally, there is sufficient factual basis, specifically from the nature of the injuries including the widely spaced location of the bruising, for Dr. Kerlinsky's opinion that the injuries were likely inflicted by more than one person. Finally, there is sufficient factual basis, specifically the nature of the injuries as including two black eyes, to support Dr. Kerlinsky's opinion that the injuries were deliberate.

The fact that Dr. Kerlinsky did not observe the actual infliction of these injuries and also cannot rely on any report from Plaintiff regarding the events that caused her injuries does not negate the reliability of Dr. Kerlinsky's opinion. His report and testimony is clear that his opinion is based solely on his assessment after the fact of her injuries.

While the above conclusions are sufficiently reliable to be admissible, there is too great an analytical gap between the underlying data regarding the nature and extent of Plaintiff's injuries and Dr. Kerlinsky's conclusions that the assailants were male and that there were four persons involved as opposed to some unspecified number greater than one. These conclusions simply do not follow from the underlying facts detailed by Dr. Kerlinsky. Rather than being genuine scientific conclusions, these appear to be speculative conclusions offered by a genuine scientist. See Dodge, 328 F.3d at 1222. Accordingly, these assertions are not admissible and will not be considered by the Court.

### B.  Conflict of Interest

CMS argues that Dr. Kerlinsky's opinions cannot be considered because Dr. Kerlinsky has a conflict of interest. According to CMS, Dr. Kerlinsky is Plaintiff's long-time treating psychiatrist and used to be the treating psychiatrist for one of Plaintiff's witnesses. As such, CMS urges that Dr. Kerlinsky's role as an expert in this case is a conflict of interest, and he should be disqualified from offering expert opinion testimony.

CMS cites to several cases in support of its contention that a district court has discretion to disqualify an expert based on a conflict of interest. However, in all of those cases, the courts were addressing a conflict arising out of an expert's relationship with parties on both sides of the litigation. In English Feedlot, Inc. v. Norden Labs., Inc., 833 F.Supp. 1498 (D. Colo. 1993), the plaintiff's expert had a previous relationship with the defendant, and the defendant moved to disqualify the expert based on this conflict of interest. In discussing the issue, the Court noted that a party does not have as strong an argument for disqualifying an expert based on a prior relationship as it does for disqualifying an attorney because the role of an attorney is to advocate

8

while the role of an expert is to provide information. Id. at 1501. Because an expert only provides information, there is less stigma when an expert changes sides, and there is less likely communication of privileged information. Id. Thus, a conflict of interest in which an expert has had a relationship with both parties is less reason to disqualify an expert than to disqualify an attorney. The other cases cited by CMS provide similar facts and reasoning. See Chamberlain Group, Inc. v. Interlogix, Inc., 2002 WL 653893 *2 (N.D. Ill. 2002) (party moved to disqualify expert that switched sides during litigation); Sells v. Wamser, 158 F.R.D. 390 (S.D. Ohio 1994) (plaintiff and defendant each hired separate experts, but the experts worked for the same company); Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271 (S.D. Ohio 1988) (defendant moved to disqualify plaintiff's expert based on defendant's prior relationship with expert).

In this case, CMS alleges a conflict of interest even less compelling for purposes of disqualification than those addressed in the above cited cases. CMS does not allege that Dr. Kerlinsky has any conflict of interest arising from any relationship he has had with CMS, another Defendant, or any defense witness in this case. As such, tthe conflict of interest is not one that will expose any privileged or confidential information communicated by defendants and does not risk undermining public confidence in the judicial system. It is not even clear to this Court that CMS has standing to raise this alleged conflict of interest for purposes of requesting the disqualification of Plaintiff's expert. CMS may certainly raise the issue of Dr. Kerlinsky's multifaceted relationship with Plaintiff and her witness in an attempt to impeach him if the case should proceed to trial, but these relationships do not bear on the scientific reliability of his opinions. In other words, the alleged conflict goes to weight rather than admissibility, and the Court will not disqualify Dr. Kerlinsky on this basis.

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike Defendant Correctional Medical Services' Motion to Strike Plaintiff's Expert Witness (Doc. 35) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant Correctional Medical Services, Inc.'s Motion to Strike Plaintiff's Expert Witness (Doc. 34) is hereby GRANTED IN PART in that Dr. Kerlinsky's opinions as to the state of mind of the persons who made entries in Plaintiff's medical records and his opinion that four male assailants inflicted Plaintiff's injuries will be stricken as inadmissible opinion testimony.  The motion is otherwise DENIED IN PART.

_____
UNITED STATES DISTRICT JUDGE